### In re PRUDENTIAL OUTFITTING CO. OF DELAWARE, Inc.

### In re CORN EXCHANGE BANK.

#### (District Court, S. D. New York. May 12, 1918.)

1. BANKRUPTCY ⬅269—SALES—VACATION—RIGHT TO OPPOSE.

   Where a sale of the bankrupt's assets under a reorganization plan had been approved, and the receiver discharged, the receiver has no standing to resist a motion by a nonassenting creditor to set aside the sale; but where the bidder and reorganized corporation were served with the order and made parties, the attorney for the receiver, who opposed the vacation of the sale, may be treated as representing such parties, though, strictly speaking, they allowed the matter to go by default.

2. BANKRUPTCY ⬅252—REORGANIZATION PLAN—SALE OF ASSETS.

   A court of bankruptcy under no circumstances can compel creditors to accept an aliquot interest in the assets of the bankrupt under the guise of a sale, for the purpose of Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 544, is to equitably distribute the property of the bankrupt; hence a reorganization plan, providing for the sale of a bankrupt's property and its transfer to a corporation to be formed, and for the delivery to creditors of preferred stock of the new corporation to the amount of their claims, is invalid, and may be set aside.

3. BANKRUPTCY ⬅252—SALE OF ASSETS—RIGHTS OF CREDITORS.

   Where a reorganization plan, providing for the sale of the property of a bankrupt corporation and its transfer to a corporation thereafter to be organized, which should receive the assets of the bankrupt company and issue its own stock to creditors for the amount of their claims, was attacked by a creditor, he cannot compel the reorganized corporation to pay him his pro rata share of the assets.

4. BANKRUPTCY ⬅262(1)—CORPORATIONS—REORGANIZATION—SALE.

   The conventional form of reorganization of a corporation, in which the court of bankruptcy may fix an upset price for the sale of corporate assets, sufficiently protects dissenting creditors, and that mode is the proper one to follow, where a sale of the assets of a bankrupt corporation, which were transferred to a reorganized corporation, which in turn issued its own stock to creditors for the amount of their claims, was attacked.

In Bankruptcy. In the matter of the bankruptcy of the Prudential Outfitting Company of Delaware, Incorporated. On motion by the

Corn Exchange Bank to set aside a sale by the referee. Motion granted.

This is a motion to set aside a sale made by a referee in bankruptcy and confirmed by the referee in the above-entitled case. The application is made by a creditor of the bankrupt under circumstances herein set forth:

The bankrupt, a commercial corporation, was adjudicated on December 11, 1917, and in the same month a committee of three creditors was organized to form a plan of reorganization. Some time about the middle of December the president and vice president of the bankrupt attended a meeting of the creditors' committee and agreed upon a reorganization which should proceed as follows: One Samuel Goldberg, acting for the creditors, was to make an offer to the receiver of the bankrupt, which was to be submitted upon notice to all the creditors, and if accepted by them and by the referee was to be the basis of the sale. The bid was in substance as follows: That the bidder should take all the stock of some 20 stores owned by the bankrupt, together with the good will and right to use their trade-name; should pay all the costs of the administration as might be agreed, or as might be allowed by the court; should pay all the priority claims in such amount as might be agreed or fixed; and should agree to pay to the general creditors 100 cents on the dollar for the amount of their respective claims, by delivering to them preferred shares of stock in a new corporation, which the bidder agreed to incorporate under the laws of the state of Delaware, with a capital stock of $1,000,000. The bidder furthermore agreed to transfer to the new corporation all the assets obtained from the receiver.

A creditors' meeting was held on the 7th day of January, 1918, before the referee, at which there attended a very large number. Prior notice of this meeting had been issued in usual form to all creditors, stating the substance of the bid and requiring them to show cause why the bid should not be accepted and the property sold in accordance therewith. An appraisal had also been made, showing assets amounting to about $62,000, including merchandise costing $45,000, and accounts of the face value of $139,000. The total indebtedness was about $300,000. No one objected; the sale was confirmed by the referee; the property was delivered to the bidder, and by him to the corporation, which distributed the preferred stock among the creditors.

The petitioner, a creditor of the company, did not receive a copy of the notice mailed to all creditors, and at the end of January for the first time learned of the transaction. On March 28th it received its share of the stock from the bidder, which it at once returned. It commenced the proceeding by an order to show cause on the 28th of March. Meanwhile the corporation had commenced to do business and had incurred liabilities. It had, moreover, paid the administration expenses and priority claims, amounting to some $8,500.

The petitioner insists that the sale was without the jurisdiction of the bankruptcy court, and therefore void. It prays as relief that the sale be set aside, and that it should have a lien upon the assets to the extent of its pro rata claim as a creditor, and that the reorganized corporation should pay that pro rata claim out of the assets attempted to be transferred.

Albert Falck, of New York City, for petitioner.

Robert P. Levis and Max E. Sanders, both of New York City, for receiver.

LEARNED HAND, District Judge (after stating the facts as above). [1] I cannot see what standing the receiver has in this proceeding. He is discharged, and I cannot recognize him as having any interest in the proceedings. An affidavit is presented on behalf of the bidder through another attorney, and although the property has been transferred to the reorganized corporation he may perhaps be said

to have an interest. However, both the bidder and the reorganized corporation were served with the order and are parties hereto, and I shall accept the attorney for the receiver as representing them for the purposes of the contest, though, strictly speaking, they appear to have allowed the matter to go by default.

[2] The case presents a question for which there is, so far as I can learn, no basis in the past precedents of this or any other court. Passing for the moment the matter of compositions, it should be enough to say that a bankruptcy court under no circumstances will, or indeed can, compel creditors to accept an aliquot interest in the assets of the bankrupt under the guise of a sale. It is quite true that Judge Holt did not put his decision in the composition of In re Woodend & Co. (D. C.) 133 Fed. 593, upon this ground, yet in Re J. B. & J. M. Cornell (D. C.) 186 Fed. 859, he refused to confirm a bid upon a sale which required creditors to accept a percentage of their claims, payable in the future—a much less drastic provision. Certainly nothing can be drawn to the comfort of the respondents from these two decisions. On the other hand, Judge J. B. McPherson in Re Northampton Portland Cement Co. (D. C.) 185 Fed. 542, refused to approve a "plan of reorganization" having this feature and because of it. Just how the matter was presented does not appear, nor that he might not have held other views upon composition.

Upon principle the question is clear. Bankruptcy does not change the character of the creditors' claims, which are measured by, and collectible in, money. It does insure equality of distribution and modify the creditors' remedies, but there is no shadow of warrant for the idea that an interest in property may be forcibly imposed upon them in place of money. They have the right, as they had before, to have those assets converted into money, collectively instead of separately, and nothing can invade or impair that right, unless it be by statute. It may be true that in the past, under the guise of sales, this court has compelled creditors to take deferred payments, though I think no contentious cases have got into the books upon that subject, except In re J. B. & J. M. Cornell, supra, which decides against the power. Noncontentious orders are by no means to be taken as safe precedents in such matters. That is, however, not this case, and it must await proper presentation to determine whether upon a public or private sale in bankruptcy this court has power to compel creditors to take future obligations instead of cash. Here the claims are not measured in money, present or future, for all recalcitrant creditors were forced to become stockholders in an enterprise over which they might individually have not the least power, and which they might wholly disapprove.

[3] The petitioner asks as part of its relief that the reorganized corporation be compelled to pay to the petitioner his pro rata share of the assets. Nothing of the sort is possible.

[4] The conventional form of reorganization does justice to dissentient creditors, and all efforts to avoid or evade it are illegal. Under it a new corporation is formed by those creditors who wish to join the plan, and who assign their claims to it or to their committee. This corporation or committee may then make a cash bid, which

it may in part pay by allowing a proportionate credit upon the assigned claims. The dissenting creditors must be paid in cash their own proportion of the bid, which is their inviolate right. They are protected by the power of the court to fix an upset price, aided in the case of bankruptcy by the statute itself. Any admissible plasticity of reorganization lies in the court's power over that feature of the proceedings. In the case at bar the new corporation need not at once turn over the assets to the receiver, but the following course may be adopted: An order may be entered, setting aside the sale as void and directing the new corporation to file an account with the proper referee of the property received by it, together with the proper charges and credits to the date thereof. After the referee has stated this account, he will cause an appraisal to be made of all the property taken on the basis of the account as stated. He will then advertise the property for sale at auction, and if the new corporation makes a bid it will be allowed credit for that proportion of the bid for which it holds assigned claims. The balance it must pay to the receiver, for distribution among those creditors whose claims it does not hold by assignment. If the amount of the bid does not equal the proper percentage of the appraisal, the court may still, if it please, confirm the sale under the statute. If another bidder secures the property, the new corporation must deliver to him, and the consideration will be distributed in due course.

An order will be entered in accordance with the foregoing.