HARDING et al. v. AMERICAN SUMATRA TOBACCO CO.

(District Court, N. D. Georgia. July 20, 1926.)

No. 349.

1. Courts ⟷524—Court appointing ancillary receivers for corporation, but having no assets in its possession, is without power to order its receivers to join in sale ordered by court having such possession.

A court of an ancillary receivership for a corporation, though in the district of its domicile, which has no assets whatever in the possession of its receivers has no power or duty to order its receivers to join in a sale under a plan of reorganization approved by the court of primary receivership, but in which the ancillary court had no part; such court having no function in the disposition of assets to be administered elsewhere.

2. Process ⟷86—Possession of res is essential to jurisdiction to bring in parties by substituted service.

The jurisdiction to summon all persons interested without personal service, and in disregard of the ordinary rules of venue, arises only when the court must act upon a definite thing in its possession, and to be disposed of by it.

3. Corporations ⟷574.

There is no jurisdiction to reorganize a corporation peculiar to the equity court of its domicile and independent of possession of its assets.

In Equity. Suit by Charles L. Harding and others against the American Sumatra Tobacco Company. On motion for decree approving plan of reorganization of defendant corporation and directing ancillary receivers to sign deed to reorganized company. Denied.

Dorsey, Howell & Heyman, of Atlanta, Ga., and Lawton & Cunningham, of Savannah, Ga., for plaintiffs.

Anderson, Rountree & Crenshaw, of Atlanta, Ga., and Beekman, Bogue, Clark & Griscom, of New York City, for defendant.

Herbert H. Maass, of New York City, for receiver.

SIBLEY, District Judge. The American Sumatra Tobacco Company was chartered and has its home office in Fulton county, Ga., within this district, but its plantations are wholly in the middle district of Georgia, and its business actively conducted in New York. On a creditor's bill, filed in the Southern District of New York, receivers were appointed. On May 8, 1925, an ancillary bill was filed in this court, and the same receivers appointed here. The ancillary bill averred, and the answer admitted, that the defendant company was chartered in Fulton county, and had its principal office, with certain records, there, but that there were no other tangible assets in the Northern District of Georgia. The ancillary receivers were directed and appointed to take into possession the company's books and papers and any other property that might be found in the district, and to bring any necessary suits, and to assist in conducting the business of the defendant, which had been ordered to be carried on by the primary receivership. The ancillary receivers have reported nothing in their hands for disposition by the court, but have reported that a plan of reorganization had been formed and approved by the New York court whereby a new corporation is, by private sale, to acquire the assets of the old in consideration of the payment of cash sufficient to satisfy creditors and of preferred stock for former preferred stockholders and common stock for common stockholders in fixed ratios. The receivers recommended approval by this court of the proposed reorganization, and by order of this court a copy of the plan was mailed to the last-known address of all stockholders, with the warning to present their objections, if any, at a fixed time and place; such warning being also published in stated newspapers. Several stockholders, both common and preferred, have filed objections to the fairness of the reorganization and to the power of the court to impose its terms upon them, but they have not appeared at the hearing. Evidence was there produced by the reorganizers that over the objections of one of the present objectors the court for the Southern District of New York has adjudged the reorganization to be fair. No evidence was produced as to the actual state of the assets and liabilities of the company or of the worth or exact terms of either the old or new stock certificates from which this court might form an independent idea of the propriety of the reorganization proposed. Decree was thereupon moved adjudging that the plan of reorganization be approved, that the offers therein to creditors and preferred stockholders are fair, timely, and equitable, and that the proposed sale of assets by the defendant company be authorized and approved by the court, and that the ancillary receivers join in the deed thereto and be thereupon discharged, and that common and preferred stockholders respectively receive the proposed securities in full settlement and adjustment of their rights, and that the new company be invested with the full title to the property of the defendant company free from all claims of that company or of any persons claiming under or through it.

The signing of this decree has been under advisement.

[1, 2] Whether this adjudication in New York against one of the stockholders who is objecting here is an estoppel upon him, and whether this court ought to act in conformity with the court of the primary receivership without evidence of the real situation, which is claimed to justify the terms of the reorganization, need not be decided, because I have reached the conclusion that this court, having no assets whatever in the hands of its receivers, has no power or duty of adjudging at all or of ordering its receivers to join in a sale. The cases of Louisville Trust Co. v. Louisville Railway, 174 U. S. 674, 19 S. Ct. 827, 43 L. Ed. 1130; Northern Pacific Railroad v. Boyd, 228 U. S. 482, 33 S. Ct. 554, 57 L. Ed. 931; and Kansas City Railroad v. Guardian Trust Co., 240 U. S. 166, 36 S. Ct. 334, 60 L. Ed. 579, established that where a judicial sale of very large corporate properties is had to carry out a reorganization scheme joined in by the mass of stockholders and creditors, the transaction is in effect as though the stockholders had sold to themselves, and that there was a duty to observe fairness to all stockholders and creditors according to their relative rights, and where such was not observed the rights of those discriminated against might be enforced in equity, notwithstanding the formal judicial sale. This led to the practice of submitting the reorganization plan to the court ordering the sale in advance of its consummation that judicial approval might be had of the terms and that the reorganizers might be secure. To this end all persons at interest are cited by substituted service to appear to make known their objections, if any, on the assumption that thereby they will be concluded by the decision of the court upon the fairness of the plan. This practice was approved, and the fairness of a proposed reorganization by sale passed upon, by the Supreme Court in Kansas City Railroad v. Central Union Trust Co., 46 S. Ct. 549, 70 L. Ed. ——, decided June 1, 1926. The case of Chicago, Rock Island & Pacific Ry. Co. v. Lincoln (C. C. A.) 284 F. 955, is direct authority to the effect that one who does not appear and assert his claim against the assets when so cited cannot afterwards assert it at all. The same court, two judges presiding, went yet further in Phipps v. Chicago, Rock Island & Pacific Rwy. Co., 284 F. 945, 28 A. L. R. 1184, and held that a creditor who did assert his claim could not, after approval of the reorganization by the court over his protest, claim payment in money, but must take the securities provided by the reorganization agreement or nothing. There was no judicial sale in the case last cited and no transfer of the assets to another corporation, but a mere adjudication that the creditors and stockholders must take what was provided in the reorganization, or nothing, notwithstanding the reorganization was arranged for while the court was holding them off from asserting their ordinary legal rights. This is a stretching of equity power beyond anything previously known, and quite beyond the intimations in the Boyd Case at page 508 (33 S. Ct. 554) repeated in Kansas City Railroad v. Central Union Trust Co., supra. To deprive a creditor of his usual remedies and force him into membership in the corporation which he only credited seems to me to be of very dubious correctness, however convenient and cheap it may be to reorganizers, and however justly disappointing to recalcitrant minorities, who may be trying to force the majority to buy them out to get rid of them. But the court in that case at least undoubtedly had a res in its possession to be administered which raised the administrative necessity of summoning all persons interested in it that a just and effectual administration might be had, which possession alone renders judgment on substituted service due process of law. The jurisdiction to summon all persons interested without personal service, and in disregard of ordinary rules of venue, arises only when the court must act upon a definite thing in its possession and to be disposed of by it. It is true that a person, including a corporation, may be such a res when its status is to be fixed. The status of a corporation as an insolvent or a bankrupt is an example. But the status of the corporation is not the question when a reorganization plan is to be considered. The interests to be adjudged are the rights of those individuals not joining in the reorganization as against those who are joining. The necessity of considering and adjusting them is incidental to the disposing of the corporate property, whether by sale or otherwise. It is not jurisdiction over the corporation, but the disposal and administration of its property, that, by raising the necessity, gives the right to deal by substituted service with all creditors and stockholders. This court has no property to dispose of. It has no call to ascertain whether a certain disposition of property will, or will not, be fair. It may not order its receivers to join in a sale which it is not making even in part. It is urged that there may be choses in action or other unknown assets in this district which should pass by the reorganization. Certain it is that

this court has not seized or brought within its power any such. A possibility of assets cannot constitute such a res as will give jurisdiction to make the decree here proposed. No court, moreover, ought to sell a thing whose existence and value are wholly unknown to it. [3] It is also suggested that there is a peculiar jurisdiction in the court of the corporate domicile. That may be granted when the corporation is proceeded against by others, or when its internal affairs are in question and its conduct of them is to be regulated. The situs of the corporate stock is at the domicile when a contest arises over its disposition, and such stock may there constitute a res when its title and disposition are the original matter in dispute. Jellenik v. Huron Copper Co., 177 U. S. 1, 20 S. Ct. 559, 44 L. Ed. 647; Harvey v. Harvey (C. C. A.) 290 F. 653; People's National Bank v. Cleveland, 117 Ga. 908, 44 S. E. 20; Hamil v. Flowers, 133 Ga. 216, 65 S. E. 961. But here the stock disposition is only incidental to a disposition of the corporate property and to the general administration of assets in another court. I hold that there is no jurisdiction to reorganize a corporation peculiar to the equity court of its domicile and independent of possession of its assets. If there were such, it should be a primary jurisdiction, and its exercise ought to be final and controlling on all other courts which might be in possession of any of the corporate assets. Had the primary receivership been sought in this court, and had ancillary receiverships brought assets within its power, a different question would be presented. But, this being purely an ancillary receivership which has seized nothing for administration, this court has no function in the disposition of the assets to be administered elsewhere. The decree proposed will be refused. The receivership can be terminated in some more appropriate way.