**CORIELL v. MORRIS WHITE, Inc., et al.**
Nos. 170, 171.

Circuit Court of Appeals, Second Circuit.
Nov. 16, 1931.

Saul S. Myers, Baldwin, Hutchins & Todd, and O'Connell & Butler, all of New York City (Charles H. Tuttle, Saul S. Myers, and Raymond O'Connell, all of New York City, of counsel), for appellants.

Nathan D. Stern, of New York City (Norman M. Behr, of New York City, on the brief), for Morris White, Inc.

Milton C. Weisman, of New York City (John S. Sheppard, Joseph R. Margulies, and Milton C. Weisman, all of New York City, of counsel), for appellees Michael Hollander and others.

Olcott, Holmes, Glass, Paul & Havens, of New York City (Joseph Glass and Jerome Weinstein, both of New York City, of counsel), for appellee Irving Trust Co., receiver, and for complainant-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

On April 6, 1931, a creditor, as assignee of a banking institution, filed a bill in equity against Morris White, Inc., a New York corporation, engaged in the manufacture of hand bags, pocketbooks, and leather goods, seeking a receivership. The bill alleged that the corporation was solvent but unable to meet its current debts, and that there was danger of destruction of its property by a forced sale, and prayed for the appointment of a receiver. The corporation filed an answer admitting the allegations of the complaint and consented to the appointment of a receiver.

The appointment was made April 6, 1931, and powers conferred upon the receiver to continue the business of manufacturing and selling its products. Thereafter, on June 3, 1931, an order was entered making permanent the receivership. Immediately a plan was prepared for reorganization of the corporation, and proceedings were had before the court for approval of the plan. The creditors, appellants here, objected to the plan proposed, but on June 15, 1931, the court entered an order approving an offer for the purchase of all the assets of Morris White, Inc., which, pursuant to the plan of reorganization, were to be, and later were, turned over to a new corporation organized for the purpose of continuing the business. Morris White was the principal stockholder of Morris White, Inc. His wife, Lily White, made the offer for the assets of the corporation as part of the plan of reorganization. It provided that the offerer would organize a new corporation under the name of Morris White Handbags, Inc., with an authorized capital of 10,000 shares, of which 1,000 was to be common stock, without par value, to be issued for such consideration as the board of directors might deem advisable. The remaining 9,000 shares were to be preferred stock, of the par value of $100 per share, to be issued by the new corporation in extinguishment of 80 per cent. of the proved and allowed claims of the creditors and 20 per cent. was to be paid by notes, to the creditors who proved their claims, the first series due on January 2, 1932, the second series due July 2, 1932, the third series due January 2, 1933, and the fourth series due July 2, 1933. These notes were noninterestbearing and given without security.

At the time the bill was filed, Morris White, Inc., had about 245 creditors who were owed about $1,072,000.30. Among its creditors were the United States government for taxes, $80,000; New York state for taxes, $57,000; banks partly secured, $440,000; and merchandise creditors, $400,000. The assets which were appraised by a creditors' committee, on a going concern basis, were as follows: Merchandise inventories listed at $1,241,208.09; $5,000 in cash; $300,000 in accounts receivable; and $4,000 in listed securities. Of the $300,000 accounts receivable, approximately $250,000 was pledged as collateral for bank loans. The creditors' committee's appraisal of the merchandise inventoried was $717,000, on the basis of a going concern value, and $357,000 on a forced sale in liquidation. The leathers listed in the accountant's statement at $316,-000 were appraised by the committee's appraisers at a value of $255,000 on a going concern basis, and $75,000 at a forced sale. Frames for hand bags, stated by the accountants to be $161,000, with a net worth of $80,000 on the basis of a going concern value, were appraised at $25,000 on a forced sale basis. Machinery and equipment, if sold at auction, would bring $10,000, whereas, if retained to carry on the business, would be worth $200,000. There was also an item of loans amounting to $1,700,000 to the Morris White Holding Company, a real estate corporation, owning three large hotels in the city of New York, upon each of which there were first mortgages. It was established in the court below that Morris White, Inc., consistently made profits averaging about $500,000 per year, which demonstrated a good will not valued.

The argument in support of the plan of reorganization is based upon the theory that the business in the past has been profitable and the best use of the assets could be made by continuing the business, that profits are realizable in the future, and that Mr. White's management would make it possible to rehabilitate the business and pay the creditors. For three years of his management, White was to be paid not more than $60,000 per year as a salary, to be fixed by the board of directors. The common stock is allotted to White. The plan provides for five directors. The preferred stock is placed in the name of two voting trustees for a period of ten years, one of such trustees to be designated by a member of the creditors' committee representing the merchandise creditors, and the other to be designated by the members of the creditors' committee representing the bank creditors. Because of this, voting trust certificates were issued for 80 per cent of the indebtedness. It was provided that the voting trustees elect two directors, one from the banking creditors' committee, and one from the merchandise creditors' committee; otherwise the preferred stock was not to vote. The management of the corporation is left to the control of the common stockholders. The board of directors is given exclusive right to employ executives of the new corporation.

The appellants object to the plan, complaining that the assets of the corporation are given back to Mr. White, the owner and manager of Morris White, Inc., without obligation to pay or repay except in redemption of preferred stock and the notes referred to. It is argued that the company failed because of his management of Morris White,

Inc., that there is no new money advanced to carry on the business, nor have the creditors been offered cash in part or whole for the value of their claims. White might receive a salary of $60,000 a year. The banks, as secured creditors, have, in addition to their security, the preferred stock and notes just as unsecured creditors receive. Counsel for the creditors' committee is to receive an unnamed sum to be agreed upon between them and the new corporation. The indebtedness of $158,500 taxes due the federal and state governments is assumed by the new corporation.

The appellants are creditors as follows: National Surety Company, American Credit Indemnity Company, and London Guaranty & Accident Company, Limited, insured accounts owed by Morris White, Inc., and claims have been filed against them, some of which have been paid, in the sum of $92,-138.15. At least one has been paid amounting to $19,329.42; Hermann Loewenstein is a creditor for $5,600, and G. Levor & Co., Inc., for $4,500. The plan of reorganization has the approval of the creditors' committee, representing claims amounting to $589,000 out of the total of $1,072,000, as well as the tax creditors, the United States government, and New York state and the bank creditors. The court below, in approving the plan, said: "I agree that the proposed reorganization is more or less of an attempt by Mr. White to lift himself by his bootstraps, in that there is here no capital with which to finance the new concern, save such as he thinks may be received on his business record from others who are favorably disposed toward him. All of us know, unfortunately too well, the present condition of business. Mr. White is hopeful; whether he is over-enthusiastic or not, I do not know; but certain it is, I think, that quite as much is to be anticipated from such effort as he might make to rehabilitate himself, as is to be had from liquidation. * * * If he can 'deliver the goods,' to use the vernacular, he should, of course, be well paid for his services; and it would be most gratifying, I am sure to everyone, if, at the end of the summer he could carry out his expressed hope of giving his creditors a check for the 20 per cent. I trust that he may be able to do so." And, in approving the offer, the court modified the plan so as to make dividends on preferred stock cumulative, to make fees allowed subject to the approval of the court, and ordered that Mr. White file a stipulation to the effect that for three years he will render exclusive services and will not, in any way, engage in any competing business.

The transfer of the property for this offer was without public sale, and competitive bids were not sought or submitted. The order in this modified form, and under these circumstances, for the transfer of the property pursuant to the plan of reorganization, was opposed by the appellants.

The question presented to us is whether these minority creditors are obliged to accept the plan, taking stock and notes in place of cash, and be contented to wait the outcome of this new venture in the hope that some day the preferred stock will be redeemed and payment of their notes made. Have the appellants been deprived of their rights as creditors by this order?

Assets of an insolvent commercial corporation have long been recognized as a trust fund for the payment of its creditors. It has likewise long been recognized that contract obligations may not be impaired by the courts. Muhlker v. N. Y. & Harlem R. R., 197 U. S. 544, 25 S. Ct. 522, 49 L. Ed. 872. Private property may not be taken in violation of contract obligations. A creditor may not be compelled to accept, in payment of his claim against a private corporation, paper which is not legal tender of the United States (Constitution of the United States, art. 1, § 10). Any other tender is not a valid tender. Farmers' & Merchants' Bank v. Federal Reserve Bank, 262 U. S. 649, 43 S. Ct. 651, 67 L. Ed. 1157, 30 A. L. R. 635. If the order appealed from does not pay the debts of the corporation to the extent of its financial ability to pay, it wipes out the contract obligations by which credit was extended to the corporation. The court has not the power to direct a creditor to accept stocks of a private corporation in payment of its commercial obligation. The assets of the corporation may not be used as a fund for the benefit of the debtor rather than a creditor. Commercial obligations, such as an extension of credit, must be imposed by the contracts of the parties with the legal obligations flowing therefrom. It must be left to the decision of the creditor whether he will accept a new form of security in payment of his debt, and thus embark upon a new venture, or insist upon the rights which are his because of the contract which he entered into and by which he extended credit. These principles are supported by judicial decision. In Northern Pacific Ry. v. Boyd, 228 U. S. 482, 33 S. Ct. 554, 561, 57 L. Ed. 931, Boyd obtained a judgment against the rail-

road. While it remained unsatisfied, a reorganization plan was executed by which the Northern Pacific Company, at foreclosure sale, purchased a debtor railroad. The reorganization contract between the stockholders and bondholders of the old company made no provision for Boyd and he claimed that he had no notice that the stockholders were to retain an interest in the new company. The Circuit Court of Appeals (177 F. 804) affirmed the decree subjecting the property of the Northern Pacific Company to the payment of his judgment. The Supreme Court, holding that the creditors were entitled to be paid before the stockholders could retain the property for any purpose whatever, said: "This conclusion does not, as claimed, require the impossible, and make it necessary to pay an unsecured creditor in cash as a condition of stockholders retaining an interest in the reorganized company. His interest can be preserved by the issuance, on equitable terms, of income bonds or preferred stock. If he declines a fair offer, he is left to protect himself as any other creditor of a judgment debtor; and, having refused to come into a just reorganization, could not thereafter be heard in a court of equity to attack it." But the court pointed out that, if no tender was made to him to come in as a creditor, his rights against the property in the new company subjected it to full payment of the debt.

In Kansas City Ry. Co. v. Central Union Co., 271 U. S. 445, 46 S. Ct. 549, 551, 70 L. Ed. 1028, which involved the sale of railroad property under the foreclosure of a mortgage, the court referring to the rule that, where it was necessary in order to protect all interests for stockholders and bondholders to enter into an agreement, any arrangement made must be executed so as not to secure the subordinate rights of stockholders at the expense of prior rights of creditors, said: "This doctrine is the 'fixed principle' according to which Northern Pacific Ry. Co. v. Boyd, 228 U. S. 507, 33 S. Ct. 554, 57 L. Ed. 931, declares the character of reorganization agreements must be determined, and to it there should be rigid adherence. But, as that opinion states, this does not require the impossible, and make it necessary always to pay unsecured creditors in cash before stockholders may retain any interest whatever in the reorganized company. By way of illustration it further pointed out, that such creditors can be protected 'by the issuance, on equitable terms, of income bonds or preferred stock.' And we now add that, when necessary, they may be protected through other arrangements, which distinctly recognize their equitable right to be preferred to stockholders against the full value of all property belonging to the debtor corporation, and afford each of them fair opportunity, measured by the existing circumstances, to avail himself of this right."

In Temmer v. Denver Tramway Co., 18 F.(2d) 226 (C. C. A. 8), judgment creditors appealed from a decree fixing the manner and amount of their participation in the reorganization plan. The creditors were to receive preferred stock of the new company to the extent of their claims allowed. The stockholders and bondholders of the old company were given new bonds and stock in the reorganized company. The creditors contended that the distribution was unfair and that they were entitled to be paid in cash out of a fund which the receiver had accumulated because he had been ordered by the court to refrain from paying interest on the old bonds. This fund went to the new company for working capital. All but 3 per cent. of the bondholders, 3 per cent. of the stockholders, and 30 per cent. of the unsecured creditors approved the plan. The court approved the plan, as well as the provisions for unsecured creditors, and said that the creditors were given dollar for dollar in preferred stock of the new company. The stockholders received new stock, paying $10 per share in addition to surrendering each share of old stock. It was held that the creditors need not be paid in cash before the stockholders could retain an interest in the new company. New funds were necessary in the plan, and it was impossible to obtain them unless stockholders were permitted to come in with their contribution. The funds out of which the creditors claimed payment belonged to the old bondholders, as accrued interest, and it was held they could use it as they saw fit in the plan of reorganization. Merchants' L. & T. Co. v. Chicago Rys. Co. (C. C. A.) 158 F. 923; Phipps v. Chicago, R. I. & P. Ry. Co. (C. C. A.) 284 F. 945, 28 A. L. R. 1184.

But the instant case does not involve the powers of a judge sitting in equity merely to pass on the fairness of a plan of reorganization in a case where there has been a public sale or other provisions for payment to creditors who object to the plan of the liquidation of the fair value of their claims in cash. In reorganizations, the courts have refused approval of plans of reorganization where cash payment is not offered. Geddes v. Anaconda Mining Co., 254 U. S. 590, 41 S. Ct. 209, 65 L. Ed. 425; In re Northamp-

ton Portland Cement Co. (D. C.) 185 F. 542; In re Sale of Assets of First Natl. Bank of Florence (D. C.) 6 F.(2d) 905; In re J. B. & J. M. Cornell Co. (D. C.) 186 F. 859; In re J. B. & J. M. Cornell (D. C.) 201 F. 381; In re Prudential Outfitting Co. (D. C.) 250 F. 504. In such cases, the courts should not require the creditor in a reorganization plan to accept, over his objections, stocks or notes in lieu of his claim for cash, even though there may be prospects of payment from the new and willing debtor. Harding v. Amer. Tobacco Co. (D. C.) 14 F.(2d) 168.

■ The compelling motive in an equity receivership is to save the business. Where a corporation is faced with financial difficulties, which seem but temporary, and require careful handling with promise of success in reorganization, it has long been the practice of a court of equity to lend a helping hand, having in mind that at the end of the receivership there shall be a reconstructed and saved business. But such good motive may not deprive a creditor of the rights created under the direct obligation resulting in the indebtedness. As Justice Brewer said in Merchants' Loan & Trust Co. v. Chicago Rys. Co. (C. C. A.) 158 F. 923, 927: "A party insisting upon those rights is probably, or even certainly, bound to suffer loss, yet while he insists it [the court] must protect him in his insistence. There is no wide discretion vested in the chancellor which permits him to disturb contract rights—rights of property." Kneeland v. American Loan Co., 136 U. S. 89, 10 S. Ct. 950, 34 L. Ed. 379; Gay v. Hudson Elec. Co. (C. C. A.) 184 F. 689; Odell v. Batterman (C. C. A.) 223 F. 292.

In Habirshaw Elec. Co. v. Habirshaw Elec. Co., Inc. (C. C. A.) 296 F. 875, 43 A. L. R. 1035, the court merely held that, where a creditor deposits his claim with a reorganization committee, such deposit constitutes a binding contract, and a creditor may not withdraw his claim except in accordance with his contract obligations.

■ It is well established that, where a court of equity takes into its possession the assets of an insolvent corporation, it will administer them on the theory that they belong to the creditors and shareholders rather than to the corporation itself. U. S. v. Butterworth Corp., 269 U. S. 504, 46 S. Ct. 179, 70 L. Ed. 380. We are unable to find authority for the claim of the appellees that the court has power to compel a creditor of any kind to accept stocks or promises to pay in the future in full extinguishment of his claim, without being afforded the alternative of receiving his proportionate share of the proceeds of the conventional sale of the property in cash.

■ There was no public sale and therefore no competitive bidding. Apparently what took place below was that an offer was made by Mrs. White for all the assets. The creditors' rights thereto were wiped out. They were directed to take preferred stock and notes. By the acceptance of the offer, the new corporation obtained the assets of the old Morris White, Inc. No new money or other assets were provided. If the transaction be termed a sale, it was not a public sale. It was a private sale approved by the court. Moreover, the reorganization plan and the method of carrying it out deprived the appellants of the opportunity which might have been afforded to them of questioning the assignment of accounts which were given as collateral to the banks. The appellants should have full opportunity to question any preference that may have been made. The banks should not collect on the security which has been pledged as collateral, and, in addition thereto, receive preferred stock. They may agree to accept preferred stock and notes for such sums as they do not realize upon the sale of the collateral up to the amount of their respective claims, but no more. One of the evils of this reorganization plan may be the retention of this collateral by the bank creditors in disregard of the rights of unsecured creditors to share in the assets of the corporation.

■ An outstanding circumstance is the willingness of the majority of creditors to proceed with this reorganization, expressing the view, as they did in the court below, that the rehabilitation of White's business gave the best promise for the payment of their debts. They willingly consented to the transfer of all the corporation's assets, deferring the payment of their debts for a sufficiently long time to warrant the expectation of payment of the notes and redemption of the preferred stock. But the minority creditors, appellants, insisting upon the right to share immediately in the proceeds of a forced sale of the corporation's assets, have dissented. Their rights must be protected. They are ordinarily entitled to a public sale with competitive bidding, the assets to be sold to the highest bidder. They have a just claim to their proportionate share of the price which would have been realized at such sale after deduction of administration expenses. If a court of equity can protect these rights and

at the same time carry out the wish of the other creditors, who favor the plan of reorganization, it should be done. The reorganization plan has been put into operation, and creditors, excepting the appellants, are content to have it proceed. We think both may be protected.

The appellants will be fully protected by having an appraisal of the value of their respective claims made before a master, to be appointed, who will take an account of the assets and liabilities of Morris White, Inc., ascertaining the value of the assets as if sold at a public sale. If the appellants establish that preferences have been granted by pledging as collateral the accounts to the banks, these preferences should be regarded as invalid for the purpose of the calculations and the amount of the accounts so pledged considered as part of the assets. In this way, from the ascertained sum of money that would have been realized, had a sale taken place, the appellants may be awarded their aliquot shares of the assets. This sum must be paid in cash, or, at the option of each of the appellants, the preferred stock and notes offered to them may be valued as of the date the reorganization plan became effective, and that sum paid in cash to them or either of them. Geddes v. Anaconda Co., 254 U. S. 590, 41 S. Ct. 209, 65 L. Ed. 425; Jones v. Missouri-Edison El. Co. (C. C. A.) 203 F. 945. Thus the appellants will be placed in a position of having awarded to them what would be the result if a distribution of the proceeds of a sale of the assets of the corporation had been made. If payment is not thus made in cash, the several amounts which appellants are found entitled to may be collected by a sale of the property transferred to the new corporation. This enables the minority creditors, in a practical manner, to obtain cash in payment, or part payment of their indebtedness. It will afford co-operation with the majority in carrying out the plan of reorganization. Kansas City Ry. v. Central Co., 271 U. S. 445, 46 S. Ct. 549, 70 L. Ed. 1028. There will thus be preserved to appellants their right to payment in cash, and it removes the objection they properly raise. The remaining creditors, satisfied with the plan, are then free to proceed with its operation.

With this disposition, the order of June 3, 1931, making the receivership permanent, will be affirmed, and the order of June 15, 1931, will be reversed with directions to the District Court to enter an order in conformity with this opinion.

The costs of this appeal including the printing of both records, may be taxed against the appellees.