In re NEW YORK, N. H. & H. R. CO.

No. 16562.

District Court, D. Connecticut.

Sept. 15, 1936.

505

Edwin A. Krauthoff, of Washington, D. C., and Arthur B. Weiss and Frederick E. Morgan, both of Bridgeport, Conn., for petitioner.

W. W. Meyer, Gen. Counsel, of New Haven, Conn. (H. J. Wells, of New Haven, Conn., of counsel), for debtor.

HINCKS, District Judge.

The petitioner alleges that he is the holder for value of convertible debentures issued by the debtor having an aggregate face value of $700, and that he files his petition in behalf of himself "and of all persons similarly situate who may elect to become parties hereto and contribute to the cost hereof." The petition assails the constitutionality of section 77 of the Bankruptcy Act, as amended (11 U.S.C.A. § 205), and of numerous of its provisions separately stated. It prays that these proceedings be dismissed, or, in the alternative, that the court declare the rights and other legal relations of this petitioner and of all other parties hereto.

The debtor filed a motion to dismiss this petition on the ground that it did not state any justiciable case or controversy; that it did not show that the petitioner has been or will be injured by these proceedings; and that the petitioner is not a party to these proceedings.

The debtor's motion to dismiss must be denied.

To be sure, the petitioner is not a formal party to these proceedings. Nevertheless, he states a sufficient interest in the res which is under administration in this court to entitle him to a hearing. Moreover, subdivision (c) (13) of section 77, as amended (11 U.S.C.A. § 205 (c) (13) provides that any creditor "shall have the right to be heard on all questions arising in the proceedings."

Nor can I sustain the debtor's contention that the petition fails to state any "controversy" within the meaning of the Declaratory Judgment Act, Jud.Code § 274d, as amended, 28 U.S.C.A. § 400. To me it seems clear that the petitioner has an interest in the debtor's estate and in so far as the act has actually affected the peti-

tioner's rights with respect to that res, he is to that extent entitled to a judicial declaration of the validity of the act.

I turn, therefore, to consider the petition on its merits. And at the outset, it is necessary to consider the scope of the decision in the case of Continental Bank v. Rock Island Railway Co., 294 U.S. 648, 55 S.Ct. 595, 602, 79 L.Ed. 1110. In this case the Supreme Court was called upon to determine a question relating to the power of the Bankruptcy Court under section 77 as enacted by the Act of March 3, 1933, 47 Stat. 1474 and before the amendments contained in the Act of August 27, 1935, 49 Stat. 911 (11 U.S.C.A. § 205). In the Rock Island Case, to be sure, the Supreme Court specifically pointed out that the validity of section 77 "in its general scope and application is not assailed." "Nevertheless," the court went on to say, "grave doubt has been expressed in respect of that question; and since the question is inherently fundamental, we deem it necessary to consider and dispose of it in limine," etc. Thereupon the court concisely stated the source and history of the bankruptcy power under the Constitution, and proceeded to the broad conclusion "that section 77, in its general scope and aim, is within the power conferred by the bankruptcy clause of the Constitution; and we so hold." Clearly there is nothing in the amendatory act of 1935 to alter that conclusion. And that the same holding is equally applicable to the amended act is tacitly conceded by the petitioner here, for he makes no contention that the general scope and aim of the act transcends the powers conferred by the bankruptcy clause of the Constitution (article 1, § 8, cl. 4).

Instead, it is here contended that the means employed by Congress to accomplish its objective offend the Constitution in several particulars. I proceed, therefore, to consider seriatim the specific provisions which the petitioner has challenged.

In paragraphs 6, 9, and 11 of the petition, it is charged that subdivisions (a) and (e), 11 U.S.C.A. § 205 (a, e) violate article 3, section 1 of the Constitution in that they purport to vest specified judicial powers in a "judge" rather than in a court. But ever since 1800, in the enactment of the bankruptcy laws, Congress has spoken of the bankruptcy judges and the bankruptcy courts indiscriminately. In the act of 1898, it is plain that the frequent references to the "judge" were intended merely

to signify the "court acting through the judge" as distinguished from judicial action by the referee. The references in section 77 must be similarly construed. In re United States, 194 U.S. 194, 24 S.Ct. 629, 48 L.Ed. 931. Thus construed, the act leaves no room for the petitioner's contention.

The petition, also in paragraph 6, challenges the validity of that provision of section 77, subdivision (a) (11 U.S.C.A. § 205 (a) which requires the judge to approve the filing of a petition "if satisfied that such petition complies with this section and has been filed in good faith." It is charged that this provision is void because the act fails to set up any ascertainable standard whereby to determine the existence of "good faith." The contention might well be disposed of by the observation that the record fails to disclose any injury to the petitioner herein arising from the application of the phrase to the pending matter.

Nevertheless, it may be observed that the courts for generations have made findings on questions involving the presence of good faith, without specific instructions from the Legislature. The same words were used, for example, in section 60c of the Bankruptcy Act, 11 U.S.C.A. § 96 (c). Their meaning in that context the courts found readily ascertainable. Kaufman v. Tredway, 195 U.S. 271, 25 S.Ct. 33, 49 L. Ed. 190. The same words, in the context of section 77B (11 U.S.C.A. § 207), have already received copious, though not wholly consistent, judicial construction. By the use of the familiar aids to statutory construction, and especially by testing the meaning of the questioned phrase against the background of the history of the act, as was done in Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591, its meaning in the context of section 77 may be ascertained. The constitutional objection is left without supporting substance.

The petition in paragraph 7 charges that subdivision (d) of the act (11 U.S.C.A. § 205 (d) includes an unconstitutional delegation of the legislative function in so far as it purports to confer upon the Interstate Commerce Commission power to determine certain facts "upon which the operation of the law depends without prescribing a definite rule of action or ascertainable standard for the ascertainment of such facts." The charge is expressly con-

fined to an alleged violation of article 1, section 1, of the Constitution.

■ It is, to be sure, fundamental that under the Constitution, Congress cannot delegate powers "strictly and exclusively legislative." Wayman v. Southard, 10 Wheat. 1, 42, 6 L.Ed. 253; Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446.

■ Here the questioned delegation relates only to the power to approve specific plans for the reorganization for railroads under administration under the bankruptcy laws. Each exercise of the power of approval thus delegated to the Commission is by the act conditioned upon the concurrence of numerous expressly stated facts, viz.: (1) That the plan be not prima facie impracticable; (2) that it complies with the provisions of subdivisions (b) and (e) of section 77 (11 U.S.C.A. § 205 (b, e); and (3) that it is compatible with the public interest. The power, necessarily implied, to ascertain the presence of these factual prerequisites, is not a power exclusively legislative. Its delegation, therefore, cannot offend article 1, section 1, of the Constitution.

The books are replete with cases in which the validity of similar acts of congressional delegation has been directly and impliedly recognized. Interstate Commerce Commission v. Goodrich Transit Co., 224 U.S. 194, 32 S.Ct. 436, 56 L.Ed. 729; Inter-Mountain Rate Cases, 234 U.S. 476, 34 S.Ct. 986, 58 L.Ed. 1408; Federal Radio Commission v. Nelson Brothers Co., 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406; Union Bridge Co. v. United States, 204 U.S. 364, 27 S.Ct. 367, 51 L.Ed. 523; St. Louis, I. M. & S. Ry. Co. v. Taylor, 210 U.S. 281, 28 S.Ct. 616, 52 L.Ed. 1061; U. S. v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; Avent v. United States, 266 U. S. 127, 45 S.Ct. 34, 69 L.Ed. 202; Interstate Commerce Commission v. Brimson, 154 U. S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047; Id., 155 U.S. 3, 15 S.Ct. 19, 39 L.Ed. 49; New York Central Securities Corporation v. United States, 287 U.S. 12, 53 S.Ct. 45, 77 L.Ed. 138; Louisville & N. R. Co. v. Interstate Commerce Commission (C.C.) 184 F. 118, affirmed 190 U.S. 273, 23 S.Ct. 687, 47 L.Ed. 1047; Railroad Commission v. Southern Pacific Co., 264 U.S. 331, 44 S. Ct. 376, 68 L.Ed. 713. And to follow the thought expressed in Buttfield v. Stranahan, 192 U.S. 470, at page 496, 24 S.Ct. 349, 48 L.Ed. 525, if Congress lacks the power to delegate such powers as are here involved, it would follow that Congress could not exert its plenary power under the bankruptcy clause to make efficacious legislative provision for the reorganization of railroads. The petitioner's contention on this feature of the act I therefore hold to be utterly without merit.

■ Paragraph 8 of the petition charges that subdivision (d) of section 77 (11 U.S. C.A. § 205 (d), in that it provides that no plan shall be approved or confirmed by the judge, "unless the plan shall first have been approved by the Commission and certified to the court," is void because "it attempts to limit the judicial power of the court vested therein by article 3, section 1, to the previous action of a legislative and executive agency."

As stated, the criticism here is not that power was conferred upon the Interstate Commerce Commission, which constitutionally it was incapable of receiving, but rather that the exercise of a judicial power, which under article 3, section 1, may be vested only in a court, was expressly conditioned upon prior action of the Commission.

But the limitation, against which the petitioner inveighs, is not at all a limitation upon the judicial power; it serves not at all to constrain the court in the unfettered performance of its judicial function when once the conditions prescribed by Congress as prerequisites to its jurisdiction have attached. At most, it is a jurisdictional limitation restricting the field which is subjected to the operation of the judicial power. Within the field defined, there is no attempt to subject the judicial power to the control of the legislative or executive departments. Such a jurisdictional limitation upon the court is wholly within the constitutional power of Congress to impose. Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L. R. 1077; Sheldon v. Sill, 8 How. 441, 448, 12 L.Ed. 1147.

Under the act only such plans of reorganization can be confirmed as the Judicial Department, in the unfettered exercise of judicial discretion and controlled only by considerations of law and equity, finds to be fair and equitable. That a multitude of reorganization plans, whether formulated or inchoate, are by this jurisdictional limitation not presentable to judicial scrutiny, I hold to be without constitutional significance.

508

■ Paragraph 9 of the petition further charges that the act in subdivision (e) is unconstitutional in so far as it attempts to vest the court with power to ascertain the facts upon which its confirmation of the plan of reorganization is conditioned, because no ascertainable standard for the determination of such facts is set up. Neither in argument nor in brief has petitioner given any further clue to his meaning than that contained in these general words of his challenge. Surely he cannot believe that a duly constituted court is incompetent to find facts without guidance from the Legislature. I can only surmise that it was meant to charge that the act purports to vest the court with a discretionary power transcending considerations of law and equity. If such were the charge, it would indeed be difficult to reconcile the power conferred with the Constitution.

But the judicial approval of the plan is by the provisions of subdivision (e) conditioned upon a judicial finding that it is "equitable." The use of that word clearly indicates a congressional intent that the bankruptcy court, like the chancellor, will be controlled by the fundamental and flexible principles of equity jurisprudence. This, however, is not the time to attempt a definition of an "equitable" plan of reorganization. For an actual controversy as to the equity of a plan cannot arise until a specific plan is submitted to the test of judicial hearing and determination. Sufficient now is the observation that a plan which works confiscation is not an "equitable" plan. The home of equity has no room for confiscation. The Constitution itself has adopted the spirit of equity; the odor of confiscation it has proscribed. And other provisions of the Bankruptcy Act, as amended, too numerous here to discuss or mention, as indeed a study of its history, show that Congress never intended that section 77, obviously of beneficent purpose, should be distorted into an instrument of confiscation.

I hold, therefore, that the power to approve a plan conferred upon the court by subdivision (e) is a proper judicial power, and that the grant of that power to the court is wholly consistent with the Constitution.

■ Paragraph 10 of the petition charges that so much of subdivision (e) of section 77 (11 U.S.C.A. § 205 (e) is unconstitutional as provides (in paragraph 2 thereof) that after the approval of a plan by the judge, the Interstate Commerce Commission shall submit the plan to stockholders and creditors for acceptance or rejection, provided, however, "That submission to any class of stockholders shall not be necessary if the Commission shall have found, and the judge shall have affirmed the finding, (a) that at the time of the finding the corporation is insolvent, or that at the time of the finding the equity of such class of stockholders has no value, or that the plan provides for the payment in cash to such class of stockholders of an amount not less than the value of their equity, if any, or (b) that the interests of such class of stockholders will not be adversely and materially affected by the plan, or (c) that the debtor has pursuant to authorized corporate action accepted the plan and its stockholders are bound by such acceptance: Provided further, That submission to any class of creditors shall not be necessary if the Commission shall have found, and the judge shall have affirmed the finding, that the interests of such class of creditors will not be adversely and materially affected by the plan, or that at the time of the finding the interests of such class of creditors have no value, or that the plan provides for the payment in cash to such class of creditors of an amount not less than the value of their interests."

It is claimed that this proviso constitutes a delegation of power exclusively legislative and thus conflicts with article 1, section 1 of the Constitution. My observations and ruling upon the contentions framed by paragraph 7 of the petition sufficiently dispose of that contention.

But it is also claimed that this proviso constitutes a delegation of judicial power to the Interstate Commerce Commission in violation of article 3, section 1.

The questioned power, it will be observed, is a bare power to find the existence or nonexistence of specified facts. It includes no semblance of the power to embody its finding of facts in a judgment or decree, final or otherwise. Nor is the exercise of the fact-finding power made to control or even affect prior or subsequent judicial action. The finding made by the Commission in the exercise of this power, serves merely to shape the subsequent procedure required of the Commission. Having submitted the plan to stockholders and creditors in accordance with the prescribed procedure, the Commission then is empowered only to "certify to the judge the re-

sults of such submission." Thereafter any creditor or stockholder who may feel aggrieved is entitled to a judicial hearing.

There is nothing in article 3 of the Constitution to preclude the delegation of a limited power such as this to an administrative agency. Den ex dem. Murray v. Hoboken Land & Improvement Co., 18 How. 272, 15 L.Ed. 372; Mitchell Coal Co. v. Pennsylvania R. R. Co., 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472; Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598; Sullivan v. Union Stockyards Co. (C. C.A.) 26 F.(2d) 60.

In paragraph 12 of the petition, subdivision (e) is assailed in so far as it provides that a plan of reorganization which has failed of acceptance by the specified number of creditors or stockholders may nevertheless be confirmed by the judge "if he is satisfied and finds, after hearing, that it makes adequate provision for fair and equitable treatment for the interests or claims of those rejecting it," etc.

There is nothing in the pending petition or indeed in the entire voluminous record of these proceedings that shows that reorganization cannot be accomplished in this matter without invoking the statutory provision now under consideration. For aught that now appears, it well may be that a plan will emerge which will satisfy the composition features of section 77, which in principle were sustained in the Rock Island decision. Indeed, section 77 requires that the parties shall attempt to accomplish a reorganization through its composition provisions before the provision now challenged shall be invoked. In a sense, therefore, the validity of the provision now challenged is not, as yet at least, in immediate controversy between the parties, and I have some doubt whether the Declaratory Judgment Act extends to such a situation. However, the debtor has invoked section 77 of the act and the petitioner's rights as a creditor have been thereby affected. The provision now challenged, if found to be valid, may operate to lend a further determination to the petitioner's rights. All things considered, I hold that the petitioner is entitled to a present declaration upon this topic also.

Obviously a plan confirmed without the assent of stockholders and creditors, as specified in the act, is not within the holding of the Rock Island Case. For the only provision for the confirmation of such a plan of reorganization was added by amendment to section 77 (49 Stat. 911 [11 U.S.C.A. § 205]) after the Rock Island decision had been handed down. And the petitioner now contends, if I understand aright, that the grant of power to the court to confirm a plan which has failed fully to satisfy the composition features of the amended act violates the Fifth Amendment.

The potential substance of the plan itself cannot serve to support the contention. For, as observed earlier in this memorandum, under the act only a plan which is free from confiscatory features may be confirmed. To be sure, under the act the court may approve a plan "modifying or altering the rights of creditors generally, or of any class of them, secured or unsecured," etc. 11 U.S.C.A. § 205 (b). But since only an equitable plan may be approved, the plan must provide that every creditor in the order of his priority shall receive under the plan rights which in equity are the fair equivalent of such of his rights as have been subjected to equitable modification, at least in so far as the assets of the debtor's estate permit. Any creditor found to be only partially secured is entitled to the equitable equivalent of such security as he has, with a right to share in equality with common creditors for the excess of his claim as allowed above the value of his security as ascertained by equitable considerations. And the plan must recognize the prior right of common creditors with respect to such assets as remain after equitable treatment has been accorded to secured creditors. Kansas City Ry. Co. v. Central Union Trust Co., 271 U.S. 445, 46 S.Ct. 549, 70 L.Ed. 1028. Such is the intent of the act; surely the substance of a plan of reorganization conforming to that intent cannot conflict with the Fifth Amendment.

Out of the numerous reorganization cases in the courts of equity, I have been unable to find one that is inconsistent with the principles expressed above. In most of these cases the power of the court, either with or without judicial sale, to enforce the interchange of securities equivalent in equity, has been assumed. In Northern Pacific R. R. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 561, 57 L.Ed. 931, it was recognized that in a railroad reorganization the interest of an unsecured creditor in the corporate assets "can be preserved by the issuance, on equitable terms, of income bonds or preferred stock. If he declines a fair offer, he is left to protect himself as

any other creditor of a judgment debtor; and, having refused to come into a just reorganization, could not thereafter be heard in a court of equity to attack it. If, however, no such tender was made and kept good, he retains the right to subject the interest of the old stockholders in the property to the payment of his debt."

After all, the principle is scarcely more than an extension of the ancient doctrine of marshaling of securities, whereby equity restricted the right of a lienor in the enforcement of his security, when the restriction caused him no prejudice and served to aid in the protection of rights belonging to another. Courts of equity have long had power to order sales free from lien. See Louisville Bank v. Radford, 295 U.S. 555, at page 583, 55 S.Ct. 854, 79 L. Ed. 1593, 97 A.L.R. 1106. In such a case, to be sure, the creditor's lien shifts to the proceeds of the sale. But if the proceeds may be deemed to be the equivalent in equity to the security which produced the proceeds, by the same principle equity may substitute some other security of equal value if necessary to prevent loss to other creditors or to protect the public interest in the continued operation of a public utility. See Kansas City Ry. Co. v. Central Union Trust Co., 271 U.S. 445, at page 455, 46 S.Ct. 549, 70 L.Ed. 1028.

We are left then only with the question whether the challenged provision is unconstitutional in that it deprives creditors of a right, or supposed right, to have the value of their respective equities determined by a public judicial sale. In answering this question, it will be helpful to consider whether a court of general equity jurisdiction has power in a proper case by decree, without a judicial sale, to approve and enforce a plan of corporate reorganization.

This important question, the Supreme Court seems never to have decided. See First National Bank v. Flershem, 290 U.S. 504, note 7 beginning on page 515, 54 S.Ct. 298, 303, 78 L.Ed. 465, 90 A.L.R. 391. But in Phipps et al. v. Chicago, R. I. & P. Railway Co. (C.C.A.) 284 F. 945, 28 A.L.R. 1184, in a carefully reasoned decision it was held that even without the aid of an enabling statute the court of equity had plenary power without a judicial sale to approve and enforce a plan of reorganization. To be sure, the value of that decision as a precedent is somewhat weakened by the fact that after certiorari had been granted (261 U.S. 611, 43 S.Ct. 363, 67 L.Ed. 826), it

was thereafter dismissed by stipulation between the parties (262 U.S. 762, 43 S.Ct. 701, 67 L.Ed. 1221). However, the doctrine has been persistently reaffirmed in the Eighth Circuit. Royal Union Life Ins. Co. v. Gross (C.C.A.) 76 F.(2d) 219; Warner Brothers Pictures, Inc., v. Lawton-Byrne-Bruner Ins. A. Co. (C.C.A.) 79 F. (2d) 804. In effect, I think, the case of Coriell v. Morris White, Inc. (C.C.A.) 54 F.(2d) 255, 260, in the Second Circuit lends support to that conclusion. In that case the District Court had approved a plan of reorganization which was effective to put the assets of the corporate defendant into the new corporation wholly owned by the defendant's stockholders, although under the plan unsecured creditors had been offered in payment of their claims only 80 per cent. of the par value thereof in preferred stock and 20 per cent. in deferred notes. Under the plan, the transfer was accomplished on order of court without public sale or competitive bids. Under these circumstances it was held that an objecting creditor could not be compelled to accept what was offered under the plan "without being afforded the alternative of receiving his proportionate share of the proceeds of the conventional sale of the property in cash." Thus plainly the court viewed a judicial sale in reorganization proceedings as a mere convention, and emphasized that view by holding that the defect in the plan just noted might be cured and the objecting creditors fully protected by an appraisal of their claims by a master who should ascertain "the value of the assets as if sold at a public sale," and on that basis ascertain the "sum of money that would have been realized, had a sale taken place" and award to objecting creditors "their aliquot shares of the assets" in cash on that basis. Thus the holding, essentially as in the cases cited from the Eighth Circuit, was to the effect that a judicial sale may be dispensed with, provided some other arrangement is substituted which guarantees objecting creditors a judicial hearing on the fairness of their treatment under the plan.

This decision, to be sure, was reversed in National Surety Co. v. Coriell, 289 U.S. 426, 53 S.Ct. 678, 681, 77 L.Ed. 1300, 88 A. L.R. 1231. But the Supreme Court, in reversing the decision, was careful to base its decision not at all upon the proposition that a judicial sale is a prerequisite to a valid reorganization. As to this, it said only, "the nonassenting creditors were entitled to

have the plan and their objections considered in an orderly way, and to a decree based on adequate data." It was pointed out that the District Court had undertaken "to pass upon the wisdom and fairness of the plan of reorganization, and the rights of nonassenting creditors." It was ordered that the decree of the District Court be vacated, not because the court was without equitable power to pass upon such questions, but because "for the proper disposition of these questions, definite, detailed, and authentic information was essential. Such information was wholly lacking" in the record of that case. Accurate and complete data, it was said, "might have influenced the court in deciding whether the plan should be approved or should be approved only upon a public sale. The failure to require relevant data before deciding whether the plan should be approved was not cured by the declaration of the Circuit Court of Appeals that the dissenting creditors were entitled to an aliquot share of what, a year later, it might be estimated the property would have brought at a public sale, and authorizing them to recover that amount, if assets to satisfy their claims were then available." The ruling thus proceeds not on the proposition that a judicial sale is a prerequisite to reorganization in equity, but rather upon the theory that an appraisal made over a year after the plan was approved subjected objecting creditors to the hazard of loss resulting from operations in the meantime. See First National Bank v. Flershem, supra, 290 U. S. 504, note 8 on page 516, 54 S.Ct. 298, 303, 306, 78 L.Ed. 465, 90 A.L.R. 391.

And the Flershem Case, just referred to, contains a similar implication. There, too, the District Court was reversed and the case remanded not upon a mandate again to offer the corporate assets upon a judicial sale at a corrected upset price, but rather "for the purpose of ascertaining the sum" which the appellant creditor "would have received if the property had been sold at a proper price." Clearly the decision contemplated that the ascertainment would be accomplished through the process of a judicial hearing, but that the required ascertainment when once accomplished had to be translated into a revised upset price and followed by the elaborate and costly procedure of a judicial sale, is not intimated.

To be sure, in all the cases discussed above the rights of unsecured creditors only were directly in issue. And the contention is here made, largely in reliance upon the doctrine of Louisville Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, that the right of a secured creditor to realize upon his security by a judicial sale is a substantive right of property guaranteed by the Fifth Amendment.

The contention, however, attributes to the Radford decision a scope broader than warranted by the facts of the case or by the language of the opinion. Neither in word nor in effect did the court there hold that a mortgagee's right to a judicial sale was a right of property beyond the power of equitable modification. On the contrary, the court remarked (295 U.S. 555, at page 597, 55 S.Ct. 854, 867, 79 L.Ed. 1593, 97 A.L.R. 1106) upon the power of equity to permit a receivership to continue "to prevent a sacrifice of the creditor's interest." The modification imposed by the Frazier-Lemke Act (11 U.S.C.A. § 203 (s) there under consideration was held to be confiscatory because designed to promote the interests of the mortgagor at the expense of the mortgagee.

The contention, moreover, rests upon inverted reasoning. For let it be granted that the right of a mortgagee to a judicial sale is a property right under the local law. Nevertheless, if a judicial sale is found to be inadequate fully to protect the mortgagee's right, under a familiar principle equity may interpose to prevent a sacrifice thereof. And it is in the discharge of this responsibility that courts of equity have developed the device of an upset price. Thus in cases in which, due to the size or spread or character of the property which is the subject-matter of the sale, a public offering may not reasonably be expected to realize any bids whatever commensurate to the value of the property, the chancellor errs if he fails to protect the mortgagee by an adequate upset price. First National Bank v. Flershem, supra.

In such a case, the bare legal right of the mortgagee to a judicial sale is superseded, not by the confiscation of the unavailing right that was his, but rather by the more effective process of equity which assures to the mortgagee the essential substance of his right. In no sense can the addition of the equitable remedy be deemed to impair the effect of the creditor's contract. National Surety Co. v. Architectural Decorating Co., 226 U.S. 276, 33 S.Ct. 17, 57 L.Ed. 221; Oshkosh Waterworks Co. v. Oshkosh, 187 U.S. 437, 23 S.Ct. 234, 47 L.

Ed. 249; Bernheimer v. Converse, 206 U. S. 516, 27 S.Ct. 755, 51 L.Ed. 1163. When thus viewed in its true perspective, the equitable power is seen to be not a species of confiscation, but the very antithesis thereof.

Especially is this conclusion applicable in proceedings for the reorganization of a railroad. For under the law of the land, railroad properties are not subject-matter for unrestricted bargain and sale. Thus, under the Interstate Commerce Act, as amended, especially by the Act of June 16, 1933, 48 Stat. 217, 49 U.S.C.A. § 5, the purchase or other acquisition of railroad property subject to the Interstate Commerce Act has been subjected to the regulation of the Interstate Commerce Commission. And in determining whether or not a given purchase shall be authorized, it is the function of the Commission not to boost the purchase price for the benefit of those having private rights in the property, but to determine whether the purchase "will promote the public interest" and "will be in harmony with and in furtherance of the plan for the consolidation of railway properties established" or to be established by it pursuant to said Act. Moreover, unless the prospective purchaser has sufficient ready cash to consummate the acquisition, under section 439 of the Transportation Act of 1920, 49 U.S.C.A. § 20a it can make good its bid only if the Commission approves its corporate financing undertaken to that end. Plainly, a judicial sale of such property, even though the sale be public in form, will not give free play to the process of competitive bidding. It follows that one having a lien upon railroad property is in a particularly unfavorable position to claim that the interposition of the beneficent powers of equity have "deprived" him of anything of value.

In reorganization proceedings, the distinction between public utilities and other corporations or individuals seems to have been recognized, if not directly adjudicated, by the Supreme Court. First National Bank v. Flershem, 290 U.S. 504, note 7 beginning at page 515, 54 S.Ct. 298, 303, 78 L.Ed. 465, 90 A.L.R. 391; Continental Bank v. Rock Island R. R. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; Kansas City Ry. Co. v. Central Union Trust Co., 271 U.S. 445, at page 455, 46 S.Ct. 549, 70 L.Ed. 1028. The distinction may further serve to differentiate the Radford Case having to do with the disposition of farm property from a proceeding for the reorganization of a railroad.

From the foregoing considerations I incline to the view that a District Court of the United States in a proper case may in the exercise of its inherent equity powers approve and enforce a plan of reorganization for a railroad without resort to the fiction of a judicial sale. That being so, it follows that the provision of subdivision (e) now under attack serves merely to confer upon the District Court in its bankruptcy part a power theretofore existing in its equity part. It is too late now to question the power of Congress to confer equity powers upon the bankruptcy court, and I hold the questioned provision to be valid and constitutional.

In paragraph 13 of the petition it is alleged: "That in and by subdivision (m) of section 77 aforesaid, it is provided that the term 'railroad corporation' as used in said section 'means any common carrier by railroad engaged in the transportation of persons or property in interstate commerce;' that such classification so attempted to be made is so unreasonable and so arbitrary as to make section 77 not a uniform law on the subject of bankruptcies, as provided in Article 1, section 8, of the National Constitution, and as to deprive the petitioner of his property without due process of law, in violation of the Fifth Amendment to the National Constitution."

Subdivision (m), 11 U.S.C.A. § 205 (m) provides as follows: "The term 'railroad corporation' as used in this section means any common carrier by railroad engaged in the transportation of persons or property in interstate commerce, except a street, a suburban, or interurban electric railway which is not operated as a part of a general railroad system of transportation or which does not derive more than 50 per centum of its operating revenues from the transportation of freight in standard steam railroad freight equipment."

I am at a loss to understand why the statutory definition should have been quoted in the truncated form appearing in paragraph 13 of the petition, but assume that petitioner intended to challenge the statute as it is rather than as he has quoted it.

Here again it may well be doubted whether the petitioner has any present standing to question the validity of the act. For even if it were held that the statutory definition involved an arbitrary classification, there is nothing in the record to show

that the petitioner is injured by the statutory classification. However, and especially in view of the fact that the present challenge is directed to the validity of the entire act (i. e., section 77, as amended [11 U.S.C.A. § 205]), it seems proper and desirable to dispose of the contention upon its merits.

Thus viewed, it is soon seen that the contention is unsound. For it is well settled that the provision in article I, § 8, cl. 4, vesting power in Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States" requires only a geographical uniformity in its operation, as distinguished from an uniformity in its availability to all classes of the community. In re Jordan, 13 Fed.Cas. page 1079, No. 7,514; Hanover National Bank v. Moyses, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113; Leidigh Carriage Co. v. Stengel (C.C.A.) 95 F. 637; Stellwagen v. Clum, 245 U.S. 605, 38 S.Ct. 215, 62 L. Ed. 507; In re Appold's Estate, 1 Fed.Cas. No. 499, page 1075; In re Chicago, R. I. & P. Ry. Co. (C.C.A.) 72 F.(2d) 443.

In so far, therefore, as Scofield's petition seeks a declaration as to the validity of the act, it is granted; and I hold that in none of the particulars charged in this petition is section 77, as amended, or any of its challenged provisions, unconstitutional. In all other respects, the petition is denied.

An order accordingly may be submitted for entry.