### In re CENTRAL OF GEORGIA RY. CO.

### No. 4829.

District Court, S. D. Georgia,
Savannah Division.

May 8, 1944.

Connerat, Hunter & Cubbedge, of Sa-vannah, Ga., for Van Kirk.

T. M. Cunningham, of Savannah, Ga., for Trustee.

Alexander & Green, of New York City and McLaws, Brennan & Zeigler, of Sa-vannah, Ga., in opposition.

LOVETT, District Judge.

Russell M. Van Kirk owns $5,000 of First Preference Income Bonds and $30,000 of Second Preference Income Bonds of the debtor. He is here asking to intervene and for one year's interest on his and other bonds of like nature.

The occasion for his appearance is that the debtor's trustee had asked for authority to pay some interest in default on other bonds of prior and superior lien "provided no interest is required to be paid on any other mortgage", and all parties at interest were given notice of that application and an opportunity to be heard.

On the hearing of the application of debtor's trustee it appeared that $1,250,000 could be safely paid on the prior bonds, and that $13,450 (one year's interest on all outstanding preference income bonds) also could be paid if such payment was found justified.

The mortgage trustee of the Consolidated Bonds and the trustee of the debtor object to the payment of any interest on Income Bonds, and together say Van Kirk, as a bondholder, should not be allowed to intervene because (1) the Trust Indenture securing his bonds forbids, (2) his right to interest has been foreclosed by a declaration of debtor's directors that no income had been earned on such bonds, and (3) without regard to the declaration, for the period in controversy the debtor has not earned any interest applicable to the Income Bonds.

Van Kirk joins issue on all three objections.

In behalf of Income Bondholders, Van Kirk says that his mortgage constitutes a first lien on three small so-called branch lines, and for the fiscal year ending June 30, 1943, they earned $166,977. For the period a formula for segregation of earnings and expenses was used during receivership and bankruptcy (9 years and 11 months) up to the same date they earned $22,120. He then points to the system earnings of $4,825,536.99 for the fiscal year ending June 30, 1943.

The objecting creditors deny that Income Bonds are a first lien on the three small lines. However, that the reorganization may go forward, that question will be hereafter determined on the petition of the debtor's trustee to settle all conflicting liens. They also say that because of the large amount of interest accruing in earlier years and in default on prior bonds ($15,-247,727), no interest is applicable to Income Bonds.

To determine the rights of the parties we must consider the terms of the Trust Indenture securing the Income Bonds. The pertinent portions are:

"Beginning with the fiscal year ending June 30, 1896, the Board of Directors of

the Railway Company shall ascertain and declare the net earnings and income applicable to the payment of interest upon the bonds secured hereby for the fiscal year ending the 30th day of June in each year, by deducting from the gross earnings and income of the Railway Company system for the fiscal year all sums paid or reserved for interest on all mortgage bonds specified herein having lien prior or superior thereto, or bonds issued in renewal thereof or in exchange therefor, on all equipment notes and any bonds resting upon new roads or property hereafter by it acquired, leased or controlled and for any and all expenses and losses of operating its system and for maintenance, taxes, assessments, insurance, rentals, upon all leased lines, including those specified herein and other like charges, cost of repairs, renewals and reasonable betterments to the railroad equipment and property used by the Railway Company and proper for its economical and efficient operation and for all deficiencies resulting from payments for any such purpose in former years, and all advances which shall have been made to provide for such deficiencies, or any part of them, and shall apply such net earnings and income (or such portion thereof as may be necessary) towards payment of the interest on the bonds herein secured, in accordance with their terms and the provisions hereof. The party of the first part shall not declare or pay nor shall the bondholders be entitled to receive interest on such bonds to exceed five per cent. in any one fiscal year and such interest shall be strictly non-cumulative and be declared and payable only out of the net earnings available for that purpose, ascertained and determined as herein provided":

"The Railway Company shall on or before the first day of September of each year furnish the Trustee with a statement showing the amount of the net earnings and income of the previous fiscal year so ascertained and declared to be applicable to the interest on the bonds secured by this mortgage, and forthwith give public notice by advertisement in some newspaper published in each of the Cities of New York and Savannah of the rate of interest, determined to be payable on said bonds and when and where the same will be paid and in default of notification to the Trustee by the requisite number of bondholders as hereinafter provided, such ascertainment and declaration by the Board of Directors of the Railway Company shall be final and conclusive between the parties hereto and upon all holders of bonds secured hereby. If the Trustee shall be notified in writing by the holders of bonds to the amount of one-third of the amount outstanding that they object to the same within thirty days after the same shall have been received by the Trustee, it shall be the duty of the said Trustee forthwith to notify the Railway Company of such objection. And the Trustee shall have the right to inspect the books of the Railway Company by a proper officer of said Trustee, or by an expert accountant appointed for the purpose by said Trustee, who shall be paid for his services by the Railway Company".

"No holder or holders of a bond or bonds secured hereby shall have the right to institute any suit, action or proceeding in equity or at law for the foreclosure of these presents, or the execution of the trusts thereof, or for the appointment of a Receiver, or for the recovery at law of the principal or interest of any of said bonds or of any part of said principal or interest, or for the ascertainment of the net income applicable to the payment of interest on any of the bonds secured hereby, or for any other remedy, without having first given notice in writing to the Trustee of the fact that default has occurred and continued as aforesaid, and making request in writing to the Trustee, and having afforded them a reasonable opportunity to proceed to exercise the powers hereinbefore granted, or to institute such action, suit or proceeding in its own name, and having also offered them adequate security and indemnity against the cost, expenses and liabilities to be incurred therein or thereby; and such notification, request and offer of indemnity are hereby declared to be conditions precedent to any action, or cause of action, by any holder or holders of said bonds, for the recovery at law of the principal or interest of any of said bonds or of any part of said principal or interest, or for the ascertainment of the net income applicable to the payment of interest on any of the bonds secured hereby, or for the foreclosure of these presents, for the appointment of a Receiver, or for any other remedy hereunder, it being intended that no one or more holders of bonds shall have the right in any manner whatever to effect, disturb or prejudice the lien of this mortgage by his or their action, except in the manner herein provided".

I. There is no evidence that Van Kirk complied with the conditions of the Indenture requiring him to request action by his mortgage trustee, or of its refusal. Nor has he offered to furnish adequate indemnity, etc.

█ I recognize that generally provisions of this kind restricting the right of a bond-holder to sue are valid and binding on him [1], but the circumstances surrounding the parties at the time the bondholder seeks to act must not be ignored. Here, the conditions have entirely changed. The properties of the railway company are in the custody of and being operated by the court. Bondholders can not foreclose their mortgages. The coercive effect of that possibility is gone. In this case counsel for the mortgage trustee of the First Preference Income Bonds stated on the hearing in open court that his client took the same position with respect to interest payments as that taken by Van Kirk.

█ This railroad is being reorganized under section 77 of the Bankruptcy Act. That act provides that "For all purposes of this section (dealing with the plan of reorganization) any creditor * * * may act in person or by an attorney * * * or by a duly authorized agent or committee" [2] and that "any creditor * * * or trustees of any mortgage * * * shall have the right to be heard on all questions arising in the proceedings, and, upon petition therefor and cause shown, any such person or any other interested party may be permitted to intervene." [3] The right to intervene is not absolute, but upon cause shown any interested party may come in. Intervention, as distinguished from the mere right to be heard, is subject to the sound discretion of the court. Compare In re Denver & R. G. Western R. Co., D.C., 13 F.Supp. 821(3), 823. Recognition of the requirements of the mortgage should be acknowledged up to the point where such recognition would become prejudicial to the rights given the bondholders by the statute or where the practical consideration for unitary representation is outweighed by other considerations. Blumgart v. St. Louis & S. F. Ry. Co., 8

Cir., 94 F.2d 712. I find no good reason for refusing to hear Van Kirk's insistence for interest on the Income Bonds, and no harm results so far as I am able to see if he is allowed to intervene. See In re New York, N. H. & H. R. Co., D.C., 16 F.Supp. 504. The trustee of one of the issues of bonds standing by his side, joins in his request to be heard. Generally, on the right to intervene, see General Orders in Bankruptcy, Nos. 37 and 49(2), 11 U.S.C.A. following section 53; Rule 24(a) (b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Securities and Exchange Comm. v. United States Realty & Imp. Co., 310 U.S. 434, 436(12), 459, 60 S.Ct. 1044, 84 L.Ed. 1293; Allen Calculators v. National Cash Register Co., 64 S.Ct. 905.

█ II. And for the same reasons I think the declaration of the directors of the debtor, made while they were not in control of the property, that there were no earnings applicable to the Income Bonds for the year ending June 30, 1943, should not be set up as a barrier to conclude a bondholder from being heard. There is no dispute about the declaration having been regularly made, transmitted and published in exact compliance with the agreements in the mortgage. But to allow the directors to find facts concerning earnings—the amount or their applicability—in such a conclusive way that they may not be reexamined by the court, whose officer is operating the railway, would be to delegate the judicial function to another or to abdicate it entirely. The court is charged with the duty of protecting all of debtor's security holders [4] and no literal construction of methods or finality of accounting should be allowed to stand in the way of discharging that paramount obligation.

III. The large question, of controlling importance, here to be decided is simply whether unpaid, accumulated interest in default in prior years on superior bonds, to the liens of which upon all or some portions of the railroad the mortgage securing the Income Bonds was expressly made subject, shall first be paid; and whether the formula for determining net earnings of the system as a whole, set out in the In-

---

[1] Fletcher Cyc. of Corp. Vol. 7, Sec. 3158; Jones v. Atlantic & W. R. Co., 193 N.C. 590, 137 S.E. 706; Cochran v. Pittsburg S. & N. R. Co., C.C., 150 F. 682, and cases cited.

[2] 11 U.S.C.A. § 205, sub. b.

[3] 11 U.S.C.A. § 205, sub. c(13).

[4] In re Chicago & N. W. Ry. Co., 7 Cir., 121 F.2d 791(9), 798, 799.

come Bond Trust Indenture and quoted above, means that each year's earnings, like a tub, must stand on its own bottom, with entire disregard of deficiencies in interest payments in earlier years.

The argument of Van Kirk is that only "payments" or "advances" for interest may be deducted from gross earnings to determine net earnings or income applicable to his bonds, and that the accruals on the First and Consolidated and certain Divisional bonds superior in liens should be disregarded and go for naught.

I am unable to agree.

■ This court judicially knows that much of the earnings of the First and Consolidated mortgaged lines before 1943 by direction of the court was used to purchase equipment, to rehabilitate the system, and to preserve equities in properties that were of value to the system as a whole. To now hold that a court of bankruptcy, applying principles of equity, could properly take such earnings, which otherwise might have been used to pay the interest accruals on superior bonds, and apply them for system benefits and to advance reorganization presumably beneficial to all creditors, and thereafter exclude the accrued interest in calculating the income available for interest on inferior Income Bonds, in my opinion, would be inequitable. If the earnings of these mortgaged lines in earlier years, instead of being spent for system benefits, had been "reserved for interest on all mortgage bonds * * * having lien prior or superior to" to the Income Bonds, and during the current year an equivalent amount had been spent for reasonable betterments, it is clear such latter amount would have been deductible from gross earnings to arrive at net income applicable to Income Bonds. That they were spent instead of being reserved, and thereby the current year's outlays were reduced, ought not to militate against security holders whose money they were. The superior mortgages create liens on earnings as well as on physical property. Unlike conditions when the debtor controls its own property, superior bondholders could not prevent the court from diverting their earnings to other uses. The diversion was intended to improve the security of

all bondholders—income as well as others with prior liens and fixed interest charges.

It is urged that the opinion in Central of Georgia Ry. Co. v. Central Trust Co. of N.Y., 135 Ga. 472, 69 S.E. 708, shows that the terms of the Trust Indenture relating to deductions are to be strictly construed and the rights of the Income Bondholders carefully protected. Therefore, it is argued that since deductions are allowed only for all sums paid or reserved for "deficiencies resulting from *payments* for any such purposes in former years, and all *advances* which shall have been made to provide for such deficiencies", the interest in default on prior mortgages should not be deducted in arriving at the net income for the fiscal year ending June 30, 1943, unless it has been actually paid or actually earmarked for payment. This argument overlooks the fact that in many years prior to 1943 the earnings were insufficient to pay fixed charges or fixed interest obligations in full. There were deficits. Just how much of the deficits represent interest actually paid or earmarked for payment is nowhere shown, but I can not find it conscionable that interest in default upon the prior cumulative securities should not be protected and paid in part when it can be judiciously done merely because earnings which in these earlier years did not exist had not been then set aside for their payment. The unpaid interest in default on bonds of superior liens aggregates $15,247,727. The net profit for the fiscal year ending June 30, 1943, was $4,825,536.99 (not considering deductions for deficiencies resulting from payments in former years, etc.). Therefore, the income bondholders are entitled to no interest.

My view would be the same even if there were no interest in default—if it should be hereafter determined the Income Bonds have no prior lien on any line of railroad. The holders of the prior securities not only have a first lien upon the property of the debtor but also upon the income from the property. Pending reorganization no subordinate lienholder is entitled as of right to share in that income until compensation is provided for both the interest and the principal of the prior bond issues.